THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>CURTIS JAY PIPPIN,<br><br>                Defendant. | CASE NO. CR16-0266-JCC<br><br>**ORDER GRANTING MOTION TO SUPPRESS** |

This matter comes before the Court on Defendant Curtis Pippin's motion to suppress (Dkt. No. 31). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to suppress (Dkt. No. 31) for the reasons explained herein.

## I.  BACKGROUND

This case involves two warrants based on four tips from the National Center for Missing and Exploited Children (NCMEC). Detective Francesca Nix of the Auburn Police Department was the officer who received these tips in or about July 2015. (Dkt. No. 31-1 at 12–16.)

### A. Tips A and B

Tips A and B from the NCMEC stated that the email [1] uploaded

---

[1] Defendant points out that at one point, Detective Nix uses the email ▮▮▮▮▮▮▮▮▮▮, omitting the "p." This was a scrivener's error and will not be addressed further.

1  a total of four images suspected of being child pornography to the internet from internet protocol

2  (IP) address 66.87.70.240. (*Id.*) The IP address belonged to mobile carrier Sprint. (*Id.* at 12.) The

3  uploads took place in Phoenix and Tempe, Arizona. (*Id.* at 12, 14.) Tip A reported that a

4  secondary email used by the uploader was ████████████, however the tip did

5  not allege that anything illicit was uploaded from that email. (*Id.* at 12.)

6      Detective Nix reviewed the photos uploaded by ████████████ and concluded

7  that they constituted child pornography. (*Id.* at 13–15.) She described the photos in detail and

8  explained why they constituted child pornography in her affidavit for a search warrant. (*Id.*)

9  Detective Nix did not state in her affidavit that she sent an administrative subpoena to (1) Google

10 regarding ████████████, (2) Microsoft Online Services regarding

11 ████████████, or (3) Sprint regarding IP address 66.87.70.240. In her

12 application for a warrant, Detective Nix stated that she believed information regarding the

13 identity of the suspect would be found in the account records of Google, Sprint, and Microsoft.

14 (*Id.* at 16.)

15    **B. Tips C and D**

16      Detective Nix contacted the NCMEC "to determine if additional CyberTips had been

17 received regarding these emails and IP address." (*Id.* at 16.) She received tips C and D in

18 response to her request. (*Id.*) Detective Nix stated that "CyberTip report #5994961 [Tip C] was

19 reported to NCMEC by Google stating that the email address of ████████████;

20 secondary email address of ████████████ uploaded images depicting child

21 pornography along with the images in CyberTip report #5994964 [Tip D]." (*Id.*) It appears that

22 images were provided with the tips. However, Detective Nix did not provide copies or a

23 description of the images in her affidavit or give any indication that she had reviewed them

24 herself and concluded they were child pornography. (*See generally id.*)

25      Before applying for the first warrant, Detective Nix served Google, Yahoo, Sprint, and

26 Comcast with administrative subpoenas. (*Id.* at 16–19.) From Google, she learned that the name

1  on the account ███████████████ was Curtis Pippin, with a phone number of (253) 202-

2  3490. (*Id.* at 17.) The email had a recovery address of ████████████. (*Id.*) The IP

3  address recently used by the account—but not the one used to upload suspected child

4  pornography—belonged to Comcast. (*Id.*) From Yahoo, Detective Nix learned that the name

5  associated with ████████████ was Mr. Jay Patterson with a zip code of 98030. (*Id.*)

6  The email had an "alternate communication channel" of ████████████. (*Id.*) The

7  subpoena to Sprint for phone number (253) 202-3490 revealed that it was registered to Curtis

8  Pippin and he lived in Kent, Washington. (*Id.* at 18.) Finally, the subpoena to Comcast revealed

9  that the IP address related to Google login IP address 98.203.237.128 was attached to a Mary

10  Kramer with a service address of ████████, Auburn, WA, 98002. (*Id.*) A law enforcement

11  database search reported Curtis Pippin's current address in Kent, and his previous address of ██

12  ████████, Auburn, WA. (*Id.*)

13  ### C. The First Affidavit and Warrant

14  Detective Nix presented the above information in affidavit to King County Superior

15  Court Judge Andrea Darvas on March 30, 2016. (Dkt. No. 31-1.) The affidavit requested a

16  warrant to search Google, Sprint, Microsoft Online Services, and Yahoo!, Inc. (*Id.* at 2–3.) The

17  affidavit stated that there was probable cause to believe that "Evidence of the crime(s) of: RCW

18  9.68A.070: Possession of Depictions of Minors Engaged in Sexually Explicit Conduct" or

19  "Contraband, the fruits of a crime, or things otherwise criminally possessed" would be

20  discovered at: (1) ███████████████ at Google, (2) ███████████████ at

21  Microsoft Online Services, (3) ███████████ at Google, (4) ███████████████

22  at Yahoo!, Inc., and (5) IP address 66.87.70.240 at Sprint. The affidavit requested a broad range

23  of digital information from each company. (*Id.*)

24  Judge Darvas signed the warrant but limited what could be seized. (*Id.* at 26–27.) The

25  Government was not permitted to search the contact list; deleted content; instant messenger/chats

26  and logs; and groups message archives, files, photos, polls, calendar, and links. (*Id.* at 27.)

1    Further, the Government could only search the content of the accounts, pictures (including

2    metadata), videos, and emails for July 25, 2015 and the preceding 30 days. (*Id.* at 26.)

3    Apparently, only Microsoft Online Services and Sprint responded to the warrant. (*Id.* at 41–42.)

4    Microsoft reported that ██████████████ was registered to Curtis Pippin in the

5    state of California with a zip code of 95848. (*Id.* at 41.) Sprint responded that "Sprint PCS IP

6    address[es] are dynamic and can be assigned to several people throughout any given day." (*Id.* at

7    42.) The fruit of the first warrant—that ████████████ was registered to Curtis

8    Pippin—provides the only link between Tips A and B and Tips C and D.

9    **D. Additional Investigation**

10    Detective Nix also conducted additional investigation through Facebook, her regional law

11    enforcement database, the National Crime Information Center, and the Washington State Crime

12    Information Center. (*Id.* at 40.) Based on this investigation, Detective Nix discovered that (1) Jay

13    Patterson had a Facebook profile associated with ███████████, (2) Curtis Pippin had

14    a Facebook account that associated him with Auburn, Washington, (3) Curtis Pippin's phone

15    number was (253) 202-3490 and his home address was ████████ in Auburn, Washington,

16    (4) he was convicted of Lewd and Lascivious Acts with a child under 14 in California in 2002,

17    and (5) he was registered in King County as a level one sex offender. (*Id.* at 40–41.)

18    **E. The Second Affidavit and Warrant**

19    The Government next presented a second affidavit and warrant request to King County

20    Superior Court Judge Chad Allred. (*Id.* at 31–46.) The second affidavit included the affidavit

21    underlying the first warrant, the first warrant, the fruits of the first warrant, and the facts from the

22    additional investigation. (*Id.* at 31–73.) The warrant sought to arrest Curtis Pippin and search his

23    home in Auburn, Washington. (*Id.* at 31–46.) Judge Allred signed the warrant without limitation.

24    (*Id.* at 75–78.) Defendant Curtis Pippin was arrested the following day; he was interrogated and

25    admitted to viewing child pornography. (Dkt. No. 1 at 5.) The devices seized from his home

26    contained thousands of pictures and videos of child pornography. (*Id.* at 5–6.) Defendant was

1  indicted on one charge of Possession of Depictions of Minors Engaged in Sexually Explicit

2  Conduct in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (Dkt. No. 15 at 1–2.)

3  **F. Defendant's Motion to Suppress**

4  Defendant now moves to suppress all evidence and all fruits of that evidence seized under

5  the two warrants, "including but not limited to Mr. Pippin's statement to law enforcement

6  following arrest and evidence of child pornography seized from his e-mails and devices at

7  home." (Dkt. No. 31 at 1.)

8  Defendant argues that the first warrant should not have been granted as to email

9  addresses ███████████, ███████████, and ███████████

10  because the affidavit did not establish probable cause that child pornography images would be

11  discovered at those email addresses. (*Id.* at 1–2.) Specifically, Defendant argues that the affiant

12  (1) failed to provide a description of the child pornography images associated with

13  ███████████ from Tips C and D, (2) "failed to factually establish that evidence of

14  child pornography would be discovered at ███████████ or

15  ███████████ merely because they were reported to be secondary e-mail addresses,"

16  (3) failed to factually connect ███████████ and ███████████, and

17  (4) relied on stale facts. Finally, Defendant argues a probable cause deficiency based on the

18  affidavit's reliance on boilerplate language regarding the habits of child pornography collectors

19  without tying them to the email addresses. (*Id.* at 2.)

20  Defendant also argues that the second warrant should not have issued due to probable

21  cause failures. (*Id.*) Specifically, Defendant argues that the affiant (1) failed to provide a

22  sufficient factual nexus for the judge to conclude that Defendant should have been arrested or

23  that contraband would be found at his home, (2) relied on stale facts, and (3) failed to provide

24  search protocols to limit the scope of the search. (*Id.*) Furthermore, Defendant challenges the

25  "circumstances under which the affiant obtained the second warrant." (*Id.*)

26  //

1  ## II.  DISCUSSION

2  ### A.  Legal Standard

3  The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST.

4  amend. IV. The Government may conduct a search or seizure with a warrant issued "upon

5  probable cause, supported by Oath or affirmation, and particularly describing the place to be

6  searched, and the persons or things to be seized." *Id*. The Supreme Court defined "probable

7  cause" as a "fair probability that contraband or evidence of a crime will be found in a particular

8  place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

9  "In reviewing the validity of a search warrant, a court is limited to the information and

10  circumstances in the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d

11  755, 778 (9th Cir. 1986). The "affidavit must recite underlying facts so that the issuing judge can

12  draw his or her own reasonable inferences and conclusions; it is these facts that form the central

13  basis of the probable cause determination." *United States v. Underwood*, 725 F.3d 1076, 1081

14  (9th Cir. 2013) (internal citations omitted). Specifically, an affidavit must contain evidence that

15  (1) a crime was committed, (2) it was the suspect who committed it, and (3) "evidence of the

16  crime would be found in the place to be searched." *Chism v. Washington State*, 661 F.3d 380,

17  389 (9th Cir. 2011). An affiant's conclusions that are unsupported by underlying facts are

18  insufficient to establish probable cause. *Underwood*, 725 F.3d at 1081.

19  In the case of child pornography cases, it is vital that the affiant state—at the very least—

20  that she has personally reviewed the photos and concluded that they fall within the definition of

21  18 U.S.C. 2256(2)(A)(i)-(iv). *See United States v. Battershell*, 457 F.3d 1048, 1051–52 (9th Cir.

22  2006) (affiant's statement that the photograph was child pornography because it depicted a

23  "young female having sexual intercourse with an adult male" was sufficient to establish probable

24

25

26

cause)[2]; *United States v. Williamson*, 439 F.3d 1125, 1135 (9th Cir. 2006) (finding affiant's statement that he had personally reviewed these images and that they showed minors engaged in sexual acts established sufficient probable cause to issue a warrant); *United States v. Smith*, 795 F.2d 841, 844 (9th Cir. 1986) (finding probable cause where "postal inspectors examined the photographs, consulted a pediatrician, interviewed [the suspect] and two of the children in the photographs, and then filed an affidavit for a warrant to search [the suspect's] residence"); *see also United States v. Groezinger*, 625 F. Supp. 2d 145, 154 (S.D.N.Y. 2009) (criticizing an affidavit's failure to delineate into which of the five categories of sexually explicit conduct the photographs reviewed fell).[3]

When an affidavit states the pictures were "lascivious" under 18 U.S.C. § 2256(2)(A)(v), the images must be attached to the affidavit for the magistrate to review. *United States v. Perkins*, 850 F.3d 1109, 1115 (9th Cir. 2017) (citing *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir. 2001)).

**B.    Analysis**

Defendant challenges the probable cause findings of the affidavits and subsequent warrants on the issues of evidence, nexus, staleness, scope, and the use of boilerplate language. (Dkt. No. 31 at 2–3.) The Court agrees that probable cause was lacking from the first affidavit as to issuing a warrant for ████████████████ , ██████████████ , and ██████████████ . Further, because the second affidavit included the first affidavit and

---

[2] Also significant to the court's decision was that the affidavit contained statements from the suspect's girlfriend that she believed a folder on his computer contained pictures of "kids having sex." *Battershell*, 457 F.3d at 1052.

[3] "[L]aw enforcement officials who are relying on images of child pornography to establish probable cause [must] provide a sufficiently detailed description of those images rather than resting on their own conclusion that the images depict sexually explicit conduct. This is not a particularly onerous requirement. In every case in which an agent is able to provide his or her conclusion that the images depict sexually explicit conduct, the agent obviously has seen the images and therefore can either attach the offending materials or simply describe in the warrant affidavit what he or she has seen." *Groezinger*, 625 F. Supp. 2d at 154.

depended upon the fruits of the first warrant, the second warrant should not have issued.

**1. The First Affidavit and Warrant**

The first affidavit failed the requirement of showing that a crime had been committed as to email addresses ████████████████, ████████████████, and ████████████████. The only fact regarding ████████████████ on which the affiant attempted to establish probable cause was that the NCMEC tip listed it as a possible secondary account to ████████████. That is insufficient. There were no allegations that it was used to upload or receive any child pornography. Had the ████████████████ email uploaded child pornographic images that had been reviewed by Detective Nix, a warrant would have been appropriate.

The following example illustrates the problem with issuing a warrant for ████████████████ because it was potentially linked to an account that did upload verified child pornographic images. Let us say law enforcement has a reliable tip that someone's house contains contraband. Law enforcement have also received an unverified tip that the owner of the first house possibly owns a second house. Law enforcement did not verify that the suspect in fact owned this second house. More importantly, law enforcement had no evidence to suggest contraband would be found at the second house. Probable cause would be absent for a warrant to search the suspect's second residence. *See United States v. Pope*, 330 F. Supp. 2d 948, 957 (M.D. Tenn. 2004) ("The Court does not suggest that multiple residences will always be immune to search. But for information about a criminal venture in one residence to justify a search of another residence, there must be some additional reason to suggest that evidence is likely to be transported between the two."); *see also United States v. Potter*, 830 F.2d 1049, 1052 (9th Cir. 1987) (demonstrating what is sufficient to establish probable cause to search a second home); *United States v. Aispuro*, 660 Fed. Appx. 526, 527 (9th Cir. 2016) (same).

The same is true here. Without an additional reason to suggest evidence would be found in the secondary email, there was not probable cause. Accordingly, the warrant for

1    ████████████████████ should not have issued, and the fruit of that search—that the

2    email account was registered to Curtis Pippin—must be suppressed.

3         Although a closer call, probable cause was also lacking for the ████████████

4    and ████████████████ email addresses from Tips C and D. As with the Hotmail account,

5    there was insufficient evidence submitted to show that a crime had been committed. Tips C and

6    D were received because the affiant reached out to the NCMEC "to determine if additional

7    CyberTips had been received regarding these emails and IP address." (Dkt. No. 31-1 at 16.) The

8    tip Detective Nix received stated that ████████████ uploaded images of suspected

9    child pornography. (*Id.* at 16.) Nothing in the tip mentioned either ████████████,

10   ████████████████, or the IP address associated with the upload from

11   ████████████ in Arizona. In her affidavit, Detective Nix did not state how the two sets

12   of tips were related. She did not review the images herself, or if she did, failed to provide a

13   description of them. Without more, this is insufficient to establish probable cause. *See Perkins*,

14   850 F.3d at 1117–18 (faulting the affiant for failing to provide the magistrate with copies of the

15   images and providing an inaccurate description); *Battershell*, 457 F.3d at 1053; *Williamson*, 439

16   F.3d at 1135; *Smith*, 795 F.2d at 844. The Court is not suggesting that the uploaded images must

17   have been provided with the affidavit. But at the very least, Detective Nix should have affirmed

18   that she had reviewed them and affirmed that they constituted child pornography or provided the

19   court with a description.

20        The Government attempts to avoid this issue by arguing that a description of the images

21   was unnecessary because ████████████, which uploaded images described by

22   Detective Nix, was connected to ████████████. (Dkt. No. 40 at 9.) The problem with

23   this argument is that although the Government lays out many facts, none of them show that

24   ████████████████ is in any way connected with ████████████. Accordingly, the

25

26

1  warrant for ████████████████ should not have issued.[4] Any fruits from that warrant should
2  be suppressed.

3  **2. The Second Affidavit and Warrant**

4  The second warrant also fails for similar reasons: (1) the only fact linking Curtis Pippin
5  to ███████████████ came from the fruit of the first warrant; and (2) although Curtis
6  Pippin was linked to ████████████████, neither affidavit contained a description of the
7  images.

8  In the second affidavit, the affiant provides only a conclusory statement without
9  supporting facts: "From these Google CyberTips, a possible name associated with the email of
10 ███████████████ was provided as Curtis J. Pippin." (Dkt. No. 31-1 at 36.) It is here that
11 the fruit of the first warrant becomes vital to the second affidavit. As the Government
12 acknowledges, the fruit of the warrant for ████████████████ was "subscriber
13 information – subscriber information that vitally identified Pippin as the owner of
14 ████████████████." (Dkt. No. 40 at 6–7.) It provides the only link between Tips A and B
15 and Tips C and D. Put differently, it is the only thing that links Curtis Pippin—along with his
16 address and phone number—to the only email account that uploaded verified child pornography.

17 Without that link, the affiant had no way to connect Pippin and his address to the images
18 uploaded by ███████████████. This invalidates the second warrant. Pippin's address and
19 phone number were known because they were associated with the ████████████ and
20 ███████████████ accounts. However, there is no evidence that the images uploaded from
21 ███████████████ were ever looked at and confirmed to be child pornography, and they
22 were not described in the affidavit. Therefore, the only way to tie Pippin's identity and address to

---

[4] The warrant was never sent to Yahoo! and therefore this motion as it pertains to ███████████████ is moot. Defendant has filed a separate motion to suppress evidence from the third warrant, acquired for ████████████████. (Dkt. No. 55.) The Court will rule on that motion when it is fully briefed.

1  verified child pornography was through the ███████████████ account; and even

2  then, the link between ████████████████ and ███████████ was tenuous.

3      The affiant attempted to avoid the probable cause failings by bringing up Defendant's

4  2002 conviction for child molestation and that the affiant's subsequent investigations, along with

5  the administrative subpoenas, repeatedly confirmed that Curtis Pippin lived at ███████████,

6  Auburn, WA, that his phone number was (253) 202-3490, and that he was a level one registered

7  sex offender. Although Pippin's conviction for child molestation is a factor to consider, "the bare

8  inference that those who molest children are likely to possess child pornography . . . does not

9  establish probable cause to search a suspected child molester's home for child pornography."

10 *United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013). Furthermore, the investigation

11 did not (1) discover the name and address of the owner of ██████████, or (2) verify

12 that the images reported in Tips C and D were in fact child pornography.[5] Accordingly, the

13 second warrant fails. The fruits of the second warrant are suppressed.[6] Because the Court

14 concludes that there was insufficient evidence to establish probable cause, it does not address

15 Defendant's arguments regarding staleness, scope, and boilerplate language.

16      **3. The Good Faith Exception**

17      The Government argues that even if the search warrants violated the Fourth Amendment,

18 suppression of the evidence is inappropriate under the good faith doctrine. (Dkt. No. 40 at 14.)

19 Under the good faith doctrine, law enforcement agents may rely on a search warrant as long as

20 the affidavit supporting the warrant is "sufficient to 'create disagreement among thoughtful and

21 competent judges as to the existence of probable cause.'" *United States v. Hove*, 848 F.2d 137,

22  _____

23 [5] Had Detective Nix looked at and described the images uploaded from ██████████,
   and confirmed that they constituted child pornography, such confirmation, along with the

24 information gathered through the administrative subpoena, would likely have been sufficient to
   justify a search warrant for Defendant's residence.

25 [6] The district court has the discretion to determine whether to conduct an evidentiary hearing on
   a motion to suppress. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Here, the Court

26 declines to hold an evidentiary hearing.

1 | 139 (9th Cir. 1988) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). However, the

2 | good faith exception does not apply to a warrant and affidavit that plainly fails to show probable

3 | cause. *See United States v. Underwood*, 725 F.3d 1076, 1086 (9th Cir. 2013). Further, the *Leon*

4 | exception forbids a police officer from relying on an error of his own making. *Groh v. Ramirez*,

5 | 540 U.S. 551, 564 (2004). Here, the affidavit included many facts that at first glance suggested

6 | probable cause, but when combed through, a significant disconnect reveals itself, and the

7 | affidavit ultimately proves insufficient. The Court therefore declines to apply the good faith

8 | exception.

9 | **III. CONCLUSION**

10 | Make no mistake, the Court is profoundly troubled by the admissions of Mr. Pippin and

11 | the child pornography discovered on his electronic devices. Child pornography is an invidious

12 | blight on our society and endangers those who most need our protection. Rarely will there be a

13 | set of facts more tempting to counsel embracing a legal fiction and ensure the ends justify the

14 | means. Collectors and purveyors of child pornography should and must be pursued and

15 | investigated aggressively—and no doubt that is what the law enforcement officers here were

16 | doing. But such pursuit must also be within the limits of our Constitution, lest governmental

17 | overreach be justified in lockstep with the severity of the alleged offense. And while

18 | endorsement of law enforcement's actions here would appear to benefit society—and admittedly

19 | it would—the long term viability of our Constitution demands more, and it depends on

20 | sometimes wholly unsatisfactory decisions such as this.

21 | For the foregoing reasons, Defendant's motion to suppress (Dkt. No. 31) is GRANTED.

22 | The fruits of the first warrant as to ███████████████ and ███████████████

23 | are suppressed. The fruits of the second warrant are also suppressed. Defendant's motion for a

24 | *Franks* hearing (Dkt. No. 46) is DISMISSED AS MOOT.

25 | //

26 | //

DATED this 2nd day of May, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE