THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9    UNITED STATES OF AMERICA,              CASE NO. CR16-0266-JCC

10                     Plaintiff,           ORDER

11              v.

12   CURTIS JAY PIPPIN,

13                     Defendant.

14

15         This matter comes before the Court on Defendant Curtis Jay Pippin's motion for a

16   *Franks*[1] hearing (Dkt. No. 46) and motion to suppress evidence from Yahoo!, Inc. (Dkt. No. 55).

17   Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral

18   argument unnecessary and hereby DENIES the motions for the reasons explained herein.

19   **I.      BACKGROUND**

20         This case involves two warrants based on four tips[2] from the National Center for Missing

21   and Exploited Children (NCMEC). Detective Francesca Nix of the Auburn Police Department

22   was the officer who received these tips in or about July 2015. (Dkt. No. 31-1 at 12–16.)

23         //

24   _____

25   [1] *Franks v. Delaware*, 438 U.S. 154 (1978).

26   [2] As discussed in Part I.B., and II.B.2., *infra*, Tips C and D were actually one tip, Tip D. Tip C
     was unrelated to this case and the result of a scrivener's error.

ORDER
PAGE - 1

1    **A. Tips A and B**

2    Tips 6025603 (Tip A) and 6069192 (Tip B) from the NCMEC stated that the email

3    ███████████████[3] uploaded a total of four images suspected of being child pornography

4    to the internet from internet protocol (IP) address ███████. (*Id.*) The IP address belonged to

5    mobile carrier Sprint. (*Id.* at 12.) The uploads took place in Phoenix and Tempe, Arizona. (*Id.* at

6    12, 14.) Tip A reported that a secondary email used by the uploader was

7    ███████████████, however the tip did not allege that anything illicit was uploaded

8    from that email. (*Id.* at 12.)

9    Detective Nix reviewed the photos uploaded by ███████████ and concluded

10    that they constituted child pornography. (*Id.* at 13–15.) She described the photos in detail and

11    explained why they constituted child pornography in her affidavit for a search warrant. (*Id.*)

12    Detective Nix did not state in her affidavit that she sent an administrative subpoena to (1) Google

13    regarding ███████████, (2) Microsoft Online Services regarding

14    ███████████ or (3) Sprint regarding IP address ███████0. In her

15    application for a warrant, Detective Nix stated that she believed information regarding the

16    identity of the suspect would be found in the account records of Google, Sprint, and Microsoft.

17    (*Id.* at 16.)

18    **B. Tips C and D**

19    Detective Nix contacted the NCMEC "to determine if additional CyberTips had been

20    received regarding these emails and IP address." (*Id.* at 16.) She received tips 5994961 (Tip C)

21    and 5994964 (Tip D) in response to her request. (*Id.*) Detective Nix stated that "CyberTip report

22    #5994961 [Tip C] was reported to NCMEC by Google stating that the email address of

23    ███████████; secondary email address of ███████████ uploaded images

24    depicting child pornography along with the images in CyberTip report #5994964 [Tip D]." (*Id.*)

25    _____

26    [3] Defendant points out that at one point, Detective Nix uses the email ███████████,
omitting the "p." This was a scrivener's error and will not be addressed further.

1    However, as it turns out, Tip C was never actually given to Detective Nix and not related to

2    Defendant in any way, and its reference in the affidavits was the result of a scrivener's error in

3    two locations. Detective Nix and Department of Homeland Security Special Agent Dan Huynh

4    submitted affidavits swearing that Tip C was the result of a typographical error and was neither

5    related to Defendant nor used by the affiant—other than creating the impression there was a

6    fourth tip—in obtaining the warrant. (Dkt. No. 64-1 at 3; Dkt. No. 64-2 at 3.) Detective Nix was

7    never in possession of Tip C, and it was only provided to Defendant's counsel by Special Agent

8    Huynh after charges were filed.

9        In regard to Tip D, it appears that images were provided with the tips, and the

10   Government maintains that it is in possession of illegal images uploaded from

11   ██████████████. (Dkt. No. 64 at 11.) However, Detective Nix did not provide copies or a

12   description of the images in her affidavit or give any indication that she had reviewed them

13   herself and concluded they were child pornography. (*See generally id.*)

14       Before applying for the first warrant, Detective Nix served Google, Yahoo, Sprint, and

15   Comcast with administrative subpoenas. (*Id.* at 16–19.) From Google, she learned that the name

16   on the account ██████████████ was Curtis Pippin, with a phone number of ██████████

17   ██. (*Id.* at 17.) The email had a recovery address of ██████████████. (*Id.*) The IP

18   address recently used by the account—but not the one used to upload suspected child

19   pornography—belonged to Comcast. (*Id.*) From Yahoo, Detective Nix learned that the name

20   associated with ██████████████ was Mr. Jay Patterson with a zip code of 98030. (*Id.*)

21   The email had an "alternate communication channel" of ██████████████. (*Id.*) The

22   subpoena to Sprint for phone number ██████████ revealed that it was registered to Curtis

23   Pippin and he lived in Kent, Washington. (*Id.* at 18.) Finally, the subpoena to Comcast revealed

24   that the IP address related to Google login IP address ██████████ was attached to a ██

25   ██ with a service address of ██████████████. (*Id.*) A law enforcement

26   database search reported Curtis Pippin's current address in Kent, and his previous address of ██

1    ███████████████ (*Id.*)

2    **C. The First Affidavit and Warrant**

3    Detective Nix presented the above information in affidavit to King County Superior

4    Court Judge Andrea Darvas on March 30, 2016. (Dkt. No. 31-1.) The affidavit requested a

5    warrant to search Google, Sprint, Microsoft Online Services, and Yahoo!, Inc. (*Id.* at 2–3.) The

6    affidavit stated that there was probable cause to believe that "Evidence of the crime(s) of: RCW

7    9.68A.070: Possession of Depictions of Minors Engaged in Sexually Explicit Conduct" or

8    "Contraband, the fruits of a crime, or things otherwise criminally possessed" would be

9    discovered at: (1) ███████████████ at Google, (2) ███████████████ at

10   Microsoft Online Services, (3) ███████████████, (4) ███████████

11   at Yahoo!, Inc., and (5) IP address ███████ at Sprint. The affidavit requested a broad range

12   of digital information from each company, but only subscriber information for the Hotmail

13   account. (*Id.*)

14   Judge Darvas signed the warrant but limited what could be seized. (*Id.* at 26–27.) The

15   Government was not permitted to search the contact list; deleted content; instant messenger/chats

16   and logs; and group message archives, files, photos, polls, calendar, and links. (*Id.* at 27.)

17   Further, the Government could only search the content of the accounts, pictures (including

18   metadata), videos, and emails for July 25, 2015 and the preceding 30 days. (*Id.* at 26.)

19   Google responded by informing the affiant that both Gmail accounts had been deleted.

20   (Dkt. No. 46-1 at 57–58.) Microsoft reported that ███████████████ was registered

21   to Curtis Pippin in the state of California with a zip code of 95848. (Dkt. No. 31-1 at 41.) Sprint

22   responded that "Sprint PCS IP address[es] are dynamic and can be assigned to several people

23   throughout any given day." (*Id.* at 42.) The fruit of the first warrant—that

24   ███████████████ was registered to Curtis Pippin—provides the only link between

25   Tips A and B and Tip D.

26       //

PAGE - 4

1
### D. Additional Investigation

2    Detective Nix also conducted additional investigation through Facebook, her regional law

3 enforcement database, the National Crime Information Center, and the Washington State Crime

4 Information Center. (*Id.* at 40.) Based on this investigation, Detective Nix discovered that (1) Jay

5 Patterson had a Facebook profile associated with ███████████████ ; (2) Curtis Pippin had

6 a Facebook account that associated him with Auburn, Washington; (3) Curtis Pippin's phone

7 number was ███████████ and his home address was ████████████████ ;

8 (4) he was convicted of Lewd and Lascivious Acts with a Child under 14 in California in 2002;

9 and (5) he was registered in King County as a level one sex offender. (*Id.* at 40–41.)

10
### E. The Second Affidavit and Warrant

11    The Government next presented a second affidavit and warrant request to King County

12 Superior Court Judge Chad Allred. (*Id.* at 31–46.) The second affidavit included the affidavit

13 underlying the first warrant, the first warrant, the fruits of the first warrant, and the facts from the

14 additional investigation. (*Id.* at 31–73.) The warrant sought to arrest Defendant and search his

15 home in Auburn, Washington. (*Id.* at 31–46.) Judge Allred signed the warrant without limitation.

16 (*Id.* at 75–78.) Defendant was arrested the following day; he was interrogated and admitted to

17 viewing child pornography. (Dkt. No. 1 at 5.) The devices seized from his home contained

18 thousands of pictures and videos of child pornography. (*Id.* at 5–6.) Defendant was indicted on

19 one charge of Possession of Depictions of Minors Engaged in Sexually Explicit Conduct in

20 violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (Dkt. No. 15 at 1–2.)

21
### F. Defendant's First Motion to Suppress

22    Defendant moved to suppress the evidence seized as a result of the first and second

23 warrants on the ground that there was insufficient probable cause to grant the warrants. (Dkt. No.

24 31.) This Court found that probable cause was lacking for the first warrant as to the

25 ████████████████ and ████████████ accounts. (Dkt. No. 69 at 10.) The

26 Court found the second warrant also should not have issued because the second affidavit relied

on a crucial piece of information from the fruits of the first warrant. (*Id.* at 10–11.) The first

warrant provided that ███████████████████ was registered to Curtis Pippin. (*Id.*) That

fact linked Curtis Pippin to the only verified images of child pornography. (*Id.*) However,

because the first warrant sought, and received, only subscriber information from Microsoft,

Defendant did not have a reasonable expectation of privacy in the name he provided to Microsoft

when signing up for his email account. As no constitutional violation occurred, suppression of

the fruits of the first warrant would have been inappropriate. (Dkt. No. 81 at 2–3.) As a result,

there was probable cause to issue the second warrant. (*Id.*)

   With the denial of Defendant's motion to suppress, the Court renewed Defendant's

motion for a *Franks* hearing (Dkt. No. 46) and motion to suppress evidence from Yahoo! (Dkt.

No. 55).[4] (Dkt. No. 81 at 5.) Because the Government and Defendant agree that this Court's

ruling on Defendant's first motion to suppress and the motion for a *Franks* hearing will be

dispositive (Dkt. No. 55 at 3), the Court first addresses Defendant's motion for a *Franks* hearing.

### G. Defendant's Motion for a *Franks* Hearing

   Defendant argues that the following information was omitted from Detective Nix's two

affidavits submitted in support of the warrant applications:

> (1) The tipster from the NCMEC prefaced each of the four tips with the following
> language: "NCMEC does not investigate and cannot verify the accuracy of the
> information it receives. NCMEC makes available reports of apparent child sexual
> exploitation to law enforcement for its independent review and analysis." (Dkt. No.
> 46-1 at 2, 12, 27, and 35.)
>
> (2) Tip C actually reported that on July 20, 2015, an individual allegedly uploaded child
> pornography using Facebook with the username "hen.d.xing" and the email address

---

[4] The motion to suppress evidence from Yahoo! stems from the fact that the warrant initially issued to search ███████████████ was never sent to Yahoo!, and therefore Special Agent Huynh applied for, and received, a third warrant. (Dkt. No. 56 at 2.)

hjk88520@yahoo.com.tw. (Dkt. No. 46-1 at 29.) The image was uploaded in Taipei, Taiwan, from IP address 110.30.225.90. (*Id.* at 30–31.) The tip also stated that "[t]he reported IP address appears to originate in a foreign country . . . . [l]aw enforcement should review all information and images associated with this report before determining how to proceed." (*Id.* at 31.)

(3) Tip D actually reported that on July 22, 2015, the email ██████████████ allegedly uploaded four images of child pornography in Phoenix, Arizona, from IP address ████████. (*Id.* at 38–45.)

(4) An administrative subpoena sent to Sprint for call records for the phone number ███ ██████ revealed that on July 20, 22, 24, and 25, 2017—the dates the images were uploaded from Arizona and Taiwan—Defendant was in Tacoma, Washington. (*Id.* at 51.)

(5) The results from executing the first warrant to search ████████████████ ███████████████████████ the accounts no longer existed. (*Id.* at 57–58.)

(*See also* Dkt. No. 46.)

## II.    DISCUSSION

### A.    Standard of Review

An officer presenting an affidavit to obtain a search warrant has a duty to provide, in good faith, all relevant information to the magistrate. *United States v. Hill*, 459 F.3d 966, 971 n.6 (9th Cir. 2006). *Franks v. Delaware*, 438 U.S. 154 (1978), created a forum for a criminal defendant to challenge a facially-valid affidavit submitted in support of a search warrant. Specifically, *Franks* hearings are intended to challenge affidavits that depend on false statements to support a finding of probable cause. *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980). A *Franks* hearing may be based not only on the inclusion of a false statement, but also on an affiant's deliberate or reckless omission of a material fact. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

1    To warrant a *Franks* hearing based on an omission, a defendant must: (1) "make a

2   substantial preliminary showing that the affidavit contained a misleading omission" that

3   "resulted from a deliberate or reckless disregard of the truth," and (2) demonstrate that "had there

4   been no omission, the affidavit would have been insufficient to establish probable cause." *U.S. v.*

5   *Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994). A "substantial preliminary showing" does not require a

6   defendant to *prove* a deliberate or reckless omission; that inquiry is reserved for the *Franks*

7   evidentiary hearing itself. *See United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). If a

8   "substantial preliminary showing" is made, the Fourth Amendment demands the Court conduct

9   an evidentiary hearing at Defendant's request. *Franks*, 438 U.S. at 155–56. However, the

10  Supreme Court was "careful . . . to avoid creating a rule which would make evidentiary hearings

11  into an affiant's veracity commonplace, obtainable on a bare allegation of bad faith. It crafted,

12  therefore, a rule of very limited scope." *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir.

13  1982).

14  **B.    Analysis**

15    The Court finds that while some of the omissions or apparent omissions were the result of

16  carelessness, Defendant has not carried his burden of showing there was any reckless or

17  deliberate material omission sufficient to defeat a finding of probable cause. The Court will

18  address each omission in turn.

19  **1. NCMEC Does Not Verify the Tips**

20    Defendant first argues that the omission of the fact that each tip was prefaced with

21  "NCMEC does not investigate and cannot verify the accuracy of the information" would mislead

22  a judge into believing the information provided was accurate and verified. (Dkt. No. 46 at 7.)

23  The Government counters that Google was the actual tipster, not NCMEC. (Dkt. No. 64 at 7.)

24  Every file that passes through Google's network has metadata. If, in its metadata, the file has

25  "the same hash value as an image or video file of suspected child pornography contained in the

26  database," Google reports it to the NCMEC. (*Id.* at 8.)

PAGE - 8

1    The Court takes the Government's argument as implying that because Google has a

2    process of identifying and reporting suspected child porn, NCMEC does not need to verify the

3    accuracy of the information it receives. However, whether NCMEC or Google opines that an

4    image is child pornography is irrelevant. As this Court made clear in a previous order, it is the

5    affiant's verification of the tip—particularly the photos themselves—that matters. (Dkt. No. 81 at

6    7.) In fact, the Court previously criticized Detective Nix for not including a description, or at the

7    very least, an affirmation that she viewed the photos uploaded by ████████████ and

8    concluded they constituted child pornography, in either affidavit. Had she done so, there would

9    have been sufficient probable cause to justify the second warrant absent the fruits of the first. (*Id.*

10    at 11 n.5.)

11    Additionally, Defendant's argument has a troubling implication. The NCMEC exists to,

12    among other things, help catch those involved with child pornography. Defendant's argument

13    requires the assumption that had the magistrate known that the NCMEC does not verify the tips

14    it receives, she would have found probable cause lacking. To say that there would be no probable

15    cause for a warrant because the NCMEC does not verify tips it receives and reports would be to

16    declaw the NCMEC in its fight to protect children. Therefore, the omission of the fact that

17    NCMEC does not verify the tips it receives is not material.

18    **2. Tip C**

19    Defendant argues that the magistrate would have wanted to know that Tip C pertained to

20    images uploaded from a Facebook account in Taiwan, and completely unrelated to Defendant.

21    This would undoubtedly be true if Tip C had been used to support the warrant application.

22    However, neither Detective Nix nor Special Agent Huynh used Tip C in the investigation. (Dkt.

23    No. 64-1 at 3; Dkt. No. 64-2 at 3.) Had either done so, they would have realized that the tip was

24    not associated with Defendant. Then, if one went ahead and used it anyway, *i.e.*, describing the

25    pictures attached to Tip C and attributing their upload to Defendant, without disclosing that the

26    uploading account belonged to someone in Taiwan, a *Franks* hearing would be warranted.

1    The Court is somewhat troubled by the fact that the presence of Tip C in the affidavit

2   made it seem like there were four, instead of three, tips pointing to Defendant. For example, the

3   affiant states that ████████████ "uploaded images depicting child pornography along

4   with the images in CyberTip report #599464 [Tip C]." (Dkt. No. 46-1 at 15.) "Along with" gives

5   the impression of the existence of another tip. However, because officers did not use Tip C, the

6   information relating to it could not have been omitted. And if the Court were to remove Tip C

7   from the affidavit, or correct the scrivener's error, it would not affect the magistrate's probable

8   cause finding. On the other hand, if the information regarding the uploader in Tip C were

9   included in the affidavit, it would only serve to confuse the magistrate, as it would be referencing

10   a tip on which the officers did not rely. While the Court finds this mistake was certainly careless,

11   it will not go so far as to say it was deliberately misleading or reckless.

12   **3.   Uploads from Arizona While Defendant in Washington**

13   Next Defendant argues that the affidavits should have included the information that the

14   uploads occurred from a cell phone using an IP address in Arizona, while cell phone records put

15   Defendant in Tacoma, Washington at those times. (Dkt. No. 46 at 4, 10.) On the surface, this

16   appears to be a significant omission. However, given the functionality of Sprint's cellular

17   network, this is not uncommon.

18   The Government submitted an affidavit from Sprint's manager in charge of subpoena

19   compliance, in which he stated that voice calls are handled by the cellular tower closest in

20   proximity, whereas data sessions (which would be used to upload material) can be routed

21   through many different data centers throughout the country. (Dkt. No. 64-3 at 3.) He went on to

22   state that it would be quite plausible for a "cellular voice call placed or received to geo-locate to

23   Tacoma, Washington and on the same date using the same phone in the same location (i.e.

24   Tacoma, Washington), for a data session usage (i.e. accessing a Gmail account with the cell

25   phone), to be routed to a Sprint data center in Phoenix, Arizona." (*Id.* at 4.) Thus, while the

26   affiant should have included the information about the uploads occurring in Arizona while

PAGE - 10

1 | Defendant was in Washington, along with an explanation as to how that happens, the Court does

2 | not find the omission misleading.

3 | **4. Gmail Accounts No Longer in Existence**

4 | Finally, Defendant argues the affiant should have included the fact that the first search

5 | warrant for the Google accounts ██████████████ and ███████████████ revealed

6 | that those accounts had been deleted. (Dkt. No. 46 at 10–11.) This point is immaterial, as Google

7 | had already given law enforcement the images—at least for ████████████████—and

8 | subscriber information. (Dkt. No. 64 at 6.) Google then deleted the accounts for violating its

9 | terms of service. (*Id.* at 6, 11.) As the Government correctly points out, the accounts to be

10 | searched could have only "provided *additional* images." (*Id.* at 6) (emphasis in original).

11 | **III.   CONCLUSION**

12 | For the foregoing reasons, Defendant's motion for a *Franks* hearing (Dkt. No. 46) is

13 | DENIED. The parties agree that the Court's ruling on Defendant's first motion to suppress and

14 | this motion for a *Franks* hearing would be dispositive as to Defendant's motion to suppress

15 | evidence from Yahoo!. Because the Court denied both of those motions, Defendant's motion to

16 | suppress evidence from Yahoo! (Dkt. No. 55) is also DENIED.

17 |

18 | DATED this 18th day of July, 2017.

19 |

20 |

21 |

22 | John C. Coughenour
UNITED STATES DISTRICT JUDGE

23 |

24 |

25 |

26 |