THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR16-0266-JCC |
| Plaintiff, | ORDER |
| v. | |
| CURTIS JAY PIPPIN, | |
| Defendant. | |

This matter comes before the Court on Defendant Curtis Jay Pippin's second emergency motion for compassionate release (Dkt. No. 120). Having considered the motion and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

## I.   BACKGROUND

On June 1, 2016, Auburn police arrested Mr. Pippin on suspicion of possessing child pornography. (Dkt. No. 91 at 4.) Upon his arrest, Mr. Pippin cooperated and confessed his conduct; showed agents where they would find his electronic storage devices; admitted to his longstanding addiction to child pornography; agreed to participate in a sexual deviancy evaluation with a therapist; and expressed his desire to seek treatment for his addiction. (*Id.* at 4–5.) Mr. Pippin also confessed to having sent images of his genitals to minor females he believed to be 12 to 15 years old, a crime for which he was never charged. (*Id.* at 5.) Mr. Pippin was subsequently detained pending trial in state court. (*Id.* at 3.) On September 19, 2016, Mr.

Pippin's case was federalized, (*id.*), and he ultimately pleaded guilty to possessing 7,207 image files and 144 video files depicting minors, including minors under the age of twelve, engaged in sexually explicit conduct, (Dkt. No. 86 at 6).

This was not Mr. Pippin's first sexually-related offense involving children. (*See* Dkt. No. 91 at 7–8.) In 2002, Mr. Pippin corresponded with an individual who he thought was a woman who wanted a man to teach her children about sex. (*Id.*) Mr. Pippin appears to have believed that he would meet these children and that he would engage in sexual contact with them. (*Id.*) The correspondence was, however, part of a sting operation conducted by law enforcement. (*Id.*) The sting was successful, and Mr. Pippin was convicted of attempted lewd or lascivious acts under California law. (*Id.*)

On November 7, 2017, the Court sentenced Mr. Pippin to 84 months in prison with 20 years of supervised release to follow. (Dkt. No. 98 at 1–2.) The Court also recommended that Mr. Pippin be incarcerated at a Federal Medical Center because he suffers from multiple chronic medical conditions including pancytopenia, a serious condition that results in depressed levels of all three blood cell types. (*See id.* at 2; Dkt. No. 111 at 3.) The BOP did not follow the Court's recommendation, although it did place Mr. Pippin at FCI-Lompoc, a federal detention facility located near a hospital reportedly capable of treating his condition.

FCI-Lompoc is now suffering the most severe COVID-19 outbreak of any federal prison: as of May 19, 2020, 885 inmates have tested positive for the virus. *COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited May 19, 2020). The outbreak's severity is likely due in part to FCI-Lompoc's living facilities, which consist of dormitories housing 80 or more people with approximately two to three feet between each person. (*See* Dkt. Nos. 116-1 at 1, 120-10 at 6–8.)

Mr. Pippin is housed in one of those dormitories, putting his life at significant risk because he suffers from pancytopenia. (*See* Dkt. No. 116-1 at 1.) Mr. Pippin's former treating physician, Dr. Manoj Menon, the section chief of hematology and medical oncology at

Harborview, has reviewed Mr. Pippin's white blood cell count and says that Mr. Pippin is at "higher risk of severe consequence" from COVID-19. (Dkt. No. 111 at 3.) Dr. Menon's statement is consistent with a meta-analysis accepted for publication in the International Journal of Clinical Chemistry, which found that "a low platelet count was associated with over fivefold enhanced risk of severe COVID-19." Giuseppe Lippi *et al.*, *Thrombocytopenia Is Associated with Severe Coronavirus Disease 2019 (COVID-19) Infections: A Meta-Analysis*, Clinica Chimica Acta, 2020, at 2.

Because of the unique risk Mr. Pippin faces from COVID-19, Mr. Pippin's counsel asked FCI-Lompoc in an email to file a motion for compassionate release on Mr. Pippin's behalf. (Dkt. No. 108 at 4.) Without waiting for a response from FCI-Lompoc or for 30 days to elapse, Mr. Pippin's counsel also filed a motion for compassionate release. (*See generally id.*) The Court denied the motion as premature while imploring FCI-Lompoc to respond to Mr. Pippin's request. (Dkt. No. 117 at 5.) Mr. Pippin's counsel sent the Court's order to FCI-Lompoc in another email. (Dkt. No. 120 at 4–5.) FCI-Lompoc never responded. (*Id.* at 5.) Now that 30 days have elapsed since FCI-Lompoc first received Mr. Pippin's request, Mr. Pippin has renewed his motion for compassionate release.[1] (*Id.* at 13.) He asks to be released to a halfway house before he serves the remaining 28 months of his 84-month sentence. (*See* Dkt. Nos. 108 at 5, 120 at 2.)

## II.     DISCUSSION

### A.     Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is

---

[1] Mr. Pippin's second motion is noted for the Court's consideration on May 29, 2020, and the Government has not yet filed response. (*See* Dkt. No. 120 at 1.) However, the Government briefed the issues presented in Mr. Pippin's second motion when the Government responded to his first motion. (*See* Dkt. No. 114 at 15–20.) A second response from the Government is therefore unnecessary to adequately inform the Court about those issues. In addition, waiting for the Government could prove fatal to Mr. Pippin, and Mr. Pippin has waited long enough. Accordingly, the Court will rule on Mr. Pippin's motion now.

consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

### B.     Extraordinary and Compelling Circumstances

The Court must first determine if extraordinary and compelling circumstances warrant a reduction of Mr. Pippin's term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13. The Court readily concludes that they do. Mr. Pippin suffers from a condition that puts him at significant risk of severe complications from COVID-19. (*See* Dkt. No. 111 at 3); Lippi *et al.*, *supra*, at 2. In addition, there is a catastrophic COVID-19 outbreak at the facility in which Mr. Pippin is incarcerated. *See COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp. And to make matters worse, Mr. Pippin is being housed at the facility in a dormitory with 80 other men who are spaced only two to three feet from one another, (*see* Dkt. No. 116-1 at 1), making "effective social distancing . . . out of the question," (Dkt. No. 120-10 at 8) (declaration of Dr. Shamsher Samra, Assistant Professor of Clinical Medicine at University of California, Los Angeles). These conditions place Mr. Pippin's life in jeopardy. He therefore faces extraordinary and compelling circumstances in the truest sense of the phrase. *See, e.g.*, *United States v. Cosgrove*, Case No. C15-0230-RSM, Dkt. No. 95 at 11 (W.D. Wash. Apr. 15, 2020) (concluding

inmate faced extraordinary and compelling circumstances because he was uniquely susceptible to COVID-19 and he was housed in a facility where the virus was spreading).

### C. Danger to the Community

Having found that extraordinary and compelling circumstances exist, the Court turns to whether Mr. Pippin presents a danger to the safety of any other person or to the community. *See* U.S.S.G. § 1B1.13(2). In assessing the danger Mr. Pippin poses, the Court looks to the nature and circumstances of Mr. Pippin's underlying offense and his history and characteristics. 18 U.S.C. § 3142(g).

Mr. Pippin's underlying offense was serious. It was also not Mr. Pippin's first sexually-related offense involving children, as in 2002 he admitted to communicating with an individual pretending to be a woman who wanted a man to teach her children about sex. (*See* Dkt. No. 91 at 7–8.) But neither of Mr. Pippin's offenses were violent, and Mr. Pippin has never been accused of inappropriate physical contact with anyone. In addition, Mr. Pippin extensively cooperated with police upon his arrest in 2016, showing the police where they would find his electronic storage devices and admitting to illicit behavior that the police were not even investigating. (*See id.* at 4–5.) Mr. Pippin also expressed a genuine desire to confront his problems throughout the criminal process. (*See id.* at 5); (Dkt. No. 92-1) (letter accepting responsibility); (Dkt. No. 92-2) (letter directed at victims). In addition, Mr. Pippin has had no disciplinary infractions while in prison and is now 50 years old, (Dkt. No. 120 at 12–13), which could reduce the likelihood that he will recidivate, *see* Office of the Inspector Gen., U.S. Dep't of Justice, *The Impact of An Aging Inmate Population on the Federal Bureau of Prisons* 40 (2016). Under the circumstances, the Court finds that Mr. Pippin is not a danger to the safety of any other person or to the community.

### D. 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Pippin compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must also consider any relevant factors set forth under 18 U.S.C.

§ 3553(a). *See* USSG. § 1B1.13. These factors include the nature and circumstances of the underlying offense, the need for the sentence imposed, the kinds of sentences available, the applicable sentencing range, pertinent policy statements, avoidance of sentencing disparities, and the need to provide victims with restitution. *See* 18 U.S.C. § 3553(a).

As noted above, Mr. Pippin committed a serious offense—one that involved and promoted the sexual exploitation of children. In ordinary circumstances, that offense would demand that Mr. Pippin serve the final 28 months of his prison sentence. But the circumstances of Mr. Pippin's incarceration are not ordinary. Indeed, they pose an extraordinary risk to Mr. Pippin's life. That risk outweighs the deterrent and retributive benefits that would be gained from incarcerating a man who does not pose a danger to the community and has already served 70 percent of his prison sentence. Accordingly, the Court finds that the factors set forth in 18 U.S.C. § 3553(a) favor release when considered in conjunction with Mr. Pippin's extraordinary circumstances. The Court therefore REDUCES Mr. Pippin's term of imprisonment to time served.

### E. Additional Term of Supervised Release

While 18 U.S.C. § 3582(c)(1)(A) authorizes a court to reduce a defendant's term of imprisonment, the statute allows a court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." The Court finds that an additional term of supervised release would adequately balance the seriousness of Mr. Pippin's offense and the need for his original sentence with the extraordinary and compelling circumstances that warrant his release. Therefore, the Court IMPOSES an additional term of supervised release commensurate with the balance of Mr. Pippin's remaining term of imprisonment as of the date this order is issued. This term of supervised release shall be followed by the previously-imposed 20 years of supervised release. The Court further ORDERS that Mr. Pippin be released to an appropriate halfway house in the Western District of Washington within 24 hours.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Pippin's second emergency motion for compassionate release (Dkt. No. 120). The Court hereby REDUCES Mr. Pippin's term of imprisonment to time served. The Court further ORDERS that Mr. Pippin be released to an appropriate halfway house in the Western District of Washington within 24 hours. The Court also IMPOSES an additional term of supervised release commensurate with the balance of Mr. Pippin's remaining term of imprisonment as of the date this order is issued, to be followed by the previously-imposed period of 20 years of supervised release. The Court further ORDERS that Mr. Pippin be released to an appropriate halfway house in the Western District of Washington within 24 hours.

DATED this 20th day of May 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE